IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

     v.

ANESSA RENEE FIERRO and            Case No.:  20-cr-134-jdp
WILLIE TREMAINE JOHNSON,

                Defendants.

---

GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

---

The United States of America, by Timothy O'Shea, Acting United States Attorney for the Western District of Wisconsin, and Assistant United States Attorney Chadwick M. Elgersma, hereby requests that the Court deny the defendants' motions to dismiss. Contrary to the defendants' claims, Congress properly exercised its Commerce Clause power when it enacted 18 U.S.C. § 844(i).

## I.      BACKGROUND

Defendants Fierro and Johnson are charged with violating § 844(i) after they attempted to burn down two commercial buildings in Madison, Wisconsin.  (Dkt. 37.) The first building, identified as Business A in the indictment, is an office complex used by multiple organizations.  (Id.; Government's Discovery, AF-WJ_0001784.)  The second building, Business B, is a mixed-use rental property with apartments on the upper levels and retail space on the street level.  (Dkt. 37; Government's Discovery, AF-WJ_0001748.)  Rather than challenge the applicability of § 844(i) to what is plainly

commercial property, the defendants chose instead to attack the constitutionality of the arson statute. (Dkt. 65; 67.)  Defendant Fierro filed her motion to dismiss first, which she immediately followed-up with a supporting brief.  (Dkt. 65; 66.)  Defendant Johnson subsequently filed his own motion to dismiss that adopted Defendant Fierro's brief. (Dkt. 67.)  Their position is that "modern Commerce Clause precedent" shows Congress exceeded its power when it passed § 844(i).  (Dkt. 66, pg. 1.)  More specifically, the defendants claim that § 844(i) violates the Tenth Amendment because it federally criminalizes "the traditionally local criminal conduct" of arson, and Congress's attempt to link the statute to the Commerce Clause was mere "lip service."  (Dkt. 65, pg. 2; 66, pg. 32; 67, pg. 2.)

The defendants' arguments are without merit because modern Commerce Clause precedent referenced in the defendants' brief not only relied on, but left intact, "decades of Commerce Clause jurisprudence."  *United States v. Wilson*, 73 F.3d 675, 686 (7th Cir. 1995).  Additionally, the defendants' analysis of Commerce Clause precedent misconstrues "both what the Supreme Court did and did not do."  *Id*.  A fair reading of the authority supports the position that the Commerce Clause empowered Congress to criminalize arson either when it (1) substantially affects interstate commerce, or (2) to protect instrumentalities of interstate commerce.  As a result, § 844(i) comports with the Tenth Amendment and is, therefore, constitutional.

II.     THE FEDERAL ARSON STATUTE – 18 U.S.C. § 844(i)

Congress initially included § 844(i) as part of Title IX of the Organized Crime Control Act of 1970. *United States v. Russell*, 471 U.S. 858, 862 n.9 (1983). The statute attempted "to curb the use, transportation, and possession of explosives" in response to a series of politically motivated bombings that plagued the country at that time. *Id.* at 860 n.5. In 1982, Congress added the word "fire" to § 844(i) to resolve "problems of practical application." *Jones v. United States*, 529 U.S. 848, 853 n.4 (2000). This change updated the language of § 844(i), which currently reads, in part:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . . .

The defendants claim that this statute is an unconstitutional overreach by Congress. Their argument fails because it is well-established that the Commerce Clause authorizes Congress to regulate actions that substantially affect interstate commerce. *See Russell*, 471 U.S. at 862 (upholding a conviction under § 844(i) where the defendant attempted to burn down a rental apartment building); *see also United States v. Adame*, 827 F.3d 637, 645 (7th Cir. 2016)(upholding a conviction under § 844(i), in part, because the government presented sufficient evidence to meet the statute's jurisdictional element); *Taylor v. United States*, 136 U.S. 2074 (2016)(affirming a Hobbs Act robbery conviction because the government satisfied the statute's jurisdictional element); *United States v. Turner*, 301

F.3d 541, 547-48 (7th Cir. 2002)(rejecting defendant's Commerce Clause challenge to a conviction under an embezzlement statute, in part, because the business of insurance affected interstate commerce).

III.    COMMERCE CLAUSE ANALYSIS

The Commerce Clause empowers Congress to regulate three broad categories: (1) activities that substantially affect interstate commerce; (2) instrumentalities of interstate commerce; and, (3) channels of interstate commerce.  *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005)(citations omitted); *United States v. Lopez*, 514 U.S. 549, 558 (1995). These three *Lopez* categories are not "methods of proof," but they "signal areas within Congress' power to regulate."  *United States v. Peterson*, 236 F.3d 848, 856 (7th Cir. 2001); *see also United States v. Schaffner*, 258 F.3d 675, 679 (7th Cir. 2001), citing *Navegar, Inc. v. United States*, 192 F.3d 1050, 1055 n.2 (D.C. Cir. 1999)(explaining that although the *Lopez* categories are "useful as a synopsis of the Supreme Court's Commerce Clause jurisprudence, the attempt to fit a regulation squarely within one category can prove elusive, even fruitless").  Moreover, while these categories provide the foundation necessary to resolve constitutional Commerce Clause questions, they should not be construed as overturning "the previous half century of Commerce Clause precedent." *Wilson*, 73 F.3d at 685; *see also United States v. Forsythe*, 711 Fed.Appx. 674, 679 (3d Cir. 2017)(holding that *Russell* remains binding precedent even following *Lopez*, *Jones*, and *Morrison*); *United States v. Mahon*, 804 F.3d 946, 953-54 (9th Cir. 2015) (rejecting facial and as-applied constitutional challenges based on *Lopez* and *Morrison* to § 844(i) and

concluding even if property or crime might be traditionally local in nature, application of § 844(i) is not foreclosed where property possesses requisite nexus to interstate commerce).

A.  Activities that Substantially Affect Interstate Commerce

As confirmed in *Lopez* and again in *Raich*, Congress has the power to regulate activities having a "substantial relation to interstate commerce."  *Wilson*, 73 F.3d at 679 (citations omitted); *see also United States v. Morrison*, 529 U.S. 598, 609 (2000)(explaining *Lopez* provides the "proper framework" for analyzing the substantial effect category). Under this category, Congress's regulatory power covers both interstate and intrastate activity that substantially affects interstate commerce.  *See Wickard v. Filburn*, 317 U.S. 111 (1942)(holding that Congress is authorized to regulate wheat production even when wheat is grown for local consumption).

Congress's decision that a regulated activity substantially affects interstate commerce does not necessarily make it so.  When questions arise, courts must conduct an "independent inquiry" into the constitutionality of the statute at issue.  *Wilson*, 73 F.3d at 680.  Such inquiries should be "modest" undertakings because courts need only decide whether Congress had a "rational basis" to determine that regulated activities substantially affect interstate commerce.  *Raich*, 545 U.S. at 22; *see also Wilson*, 73 F.3d at 680 (explaining that courts will decide if a rational basis exists for concluding that a regulated activity substantially affects interstate commerce).

Indeed, because the review of a statute is one of "modest" scope, courts have generally found that a rational basis exists linking the regulated activity to a substantial effect on interstate commerce, and any exceptions are rare.  For example, in *Lopez* the Court found that the Gun-Free School Zones Act of 1990 violated the Commerce Clause because no rational basis existed to believe that possessing a firearm in a school zone substantially affected interstate commerce.  *Lopez*, 514 U.S. at 567.

Similarly, in *Morrison*, the Supreme Court struck down 42 U.S.C. § 13981 when it held that Congress lacked the authority to regulate gender-motivated violence. *Morrison*, 529 U.S. at 612.   In doing so, the *Morrison* Court relied on four key points from *Lopez*.  First, the Court explained that *Lopez* hinged on the fact that possessing a gun in a school zone, a prohibited act under 18 U.S.C. § 922(g), did not substantially affect interstate commerce.  *Id*. at 610.  In other words, illegally possessing a firearm violated a "criminal statute that, by its terms, had nothing to do with commerce, or any sort of economic enterprise however broadly one might define those terms."  *Id*. Second, the *Lopez* Court found 18 U.S.C. §922(g) contained "no express jurisdictional element" limiting its application to a "discrete set of firearm possessions" that directly impacted interstate commerce.  *Id*. at 611-12.  Third, the Court noted that in *Lopez* neither § 922(g), nor its legislative history, contained "express congressional findings" that gun possession in a school zone affected interstate commerce  *Id*. at 612.  Although this is not required, *Lopez* emphasized the importance of reviewing congressional findings because it may help assess Congress's "legislative judgment."  *Id*.  Fourth, *Lopez*

recognized that the connection between possessing a firearm in a school zone and interstate commerce was "attenuated." *Id.* The Court "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617.

1. Arson, as proscribed by §844(i), is an economic crime that substantially affects interstate commerce.

Contrary to the scattered occasions where courts have found that no rational basis exists to find that a regulated activity substantially affects interstate commerce, § 844 is specifically tailored to and directed at interstate commerce. *Lopez* and its progeny help underscore this point by illustrating how § 844(i) is distinct from the handful of statutes struck down by the Supreme Court. How is § 844(i) distinguishable? Unlike the regulated activities at issue in *Lopez* and *Morrison*, § 844(i) proscribes an economic crime that requires maliciously damaging or destroying by means of fire or an explosive any real or personal property.

As one court pointed out, arson is "frequently an economically-motivated crime." *United States v. McFarland*, 311 F.3d 376, 421 (5th Cir. 2002). *cf. United States v. Gray*, 260 F.3d 1267, 1274 (11th Cir. 2001)(explaining that, under the Hobbs Act, robbery is "undeniably an economic crime" because it "deprives the victim of its ability to use money or property in commerce").[1] Arson is often motivated by greed – the desire to fraudulently collect insurance proceeds – or to deprive someone of their financial

---

[1] *But see United States v. Hill*, 927 F.3d 188, 205-06 (4th Cir. 2019)(noting that while arson is not "inherently economic," § 844(i) is constitutional because it contains a jurisdictional element).

interest in the property.  The economic nature of arson is not only discussed by courts, it is articulated in generally accepted definitions of arson;[2] captured in the Model Penal Code's definition of arson;[3] and, analyzed at length in statistical studies.[4]

Defendants Fierro and Johnson take the position that, under the Commerce Clause, Congress is strictly limited to regulating such things as markets or commodities. (Dkt. 66, pg. 12-13.)  The Fourth Circuit, however, rejected such a narrow interpretation. It explained that even if regulated conduct does not directly impact commerce or property, it can still be considered economic when a connection between the conduct and interstate commerce is evident. *See Gibbs v. Babbitt*, 214 F.3d 483, 492 (4th Cir. 2000) (contrasting the hunting of red wolves with gender-motivated violence, but holding that hunting is "in a meaningful sense economic activity" because wolves pose a threat to livestock and are a draw for interstate tourism).

In addition, even though regulated conduct may be "local" or have "only an indirect effect on commerce," it is important to consider the conduct as it relates to a "class of activities" and evaluate their "total incidence on interstate commerce."  *United States v. Turner*, 301 F.3d 541, 547-48 (7th Cir. 2002).   As an example, intentionally setting fire to an apartment complex not only affects the local rental of units inside the

---

[2] *Arson*, Black's Law Dictionary (7th ed. 1999).
[3] ALI Model Penal Code, § 220.1(1)(1985).
[4] *See generally* Thomas C. Spillman and Thomas A. Zak, "Arson:  An Economic Phenomenon?," The American Economist, available at https://journals.sagepub.com/doi/pdf/10.1177/056943457902300207 (last visited April 7, 2021).

building, it indirectly affects a "much broader commercial market in rental properties." *Russell*, 471 U.S. at 862.

Arson is an economic crime. It destroys property so people can fraudulently collect insurance proceeds, or it deprives a person of their financial interest in the property. And while arson, on its face, may appear to be a local crime, it has a broader impact on interstate commerce. For these reasons, a rational connection between arson and commerce is evident – especially as it relates to § 844(i).

2. The jurisdictional element of § 844(i) properly restricts its application to activities that substantially affect interstate commerce.

Should the court disagree and find that arson is not inherently economic, the next step is to address whether § 844(i) contains a jurisdictional element limiting its application to a "discrete set" of activities that directly impact interstate commerce. *Morrison*, 529 U.S. at 611-12. A jurisdictional element guarantees a statute's "constitutionality" when a statute's language either "limits the regulation to interstate activity or ensures that the activity to be regulated falls within one of the three [*Lopez*] categories of congressional power." *United States v. Hoffmeyer*, 2001 U.S. Dist. LEXIS 25618, *53 (W.D. Wis. Jan. 25, 2001), citing *United States v. Rodia*, 194 F.3d 465, 473 (3d Cir. 1999); *see also Lopez*, 514 U.S. at 561 (implying that jurisdictional elements are useful when they can ensure, through case-by-case inquiry, that regulated activity affects interstate commerce).

Title 18, United States Codes, Section 844(i) contains language expressly limiting its application to arson that is directed at "any building, vehicle, or other real or

personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."  18 U.S.C. § 844(i).  The Supreme Court has repeatedly recognized the significance of such jurisdictional elements.  *See Raich*, 545 U.S. at 23, *Morrison*, 529 U.S. at 613; *Lopez*, 514 U.S. at 562; *Bond v. United States*, 572 U.S. 844 (2014); *see also Torres v. Lynch*, 136 S. Ct. 1619, 1624 (2016)(discussing § 844(i) and noting that "[t]he jurisdictional element…ties the substantive offense (here, arson) to one of Congress's constitutional powers (here, its authority over interstate commerce), thus spelling out the warrant for Congress to legislate").

Not only does § 844(i) contain a jurisdictional element, precedent shows that § 844(i)'s jurisdictional element limits the statute's application to arson that substantially affects interstate commerce.  In *United States v. Tocco*, 135 F3d. 116, 123 (7th Cir. 1998), the defendant owned a ground-floor retail store in a mixed-use rental building.  When his business fell on difficult times, the defendant attempted to collect an insurance award by setting fire to the retail store.  *Id*. at 122.    The resulting fire killed one firefighter, injured 24 others, and completely destroyed the building leaving the residents of the apartments located above the retail store homeless.  *Id*. at 121.  After being convicted and sentenced to 435 months in federal prison, the defendant made an as-applied challenge claiming the government failed to present evidence that supported § 844(i)'s jurisdictional element.  *Id*. at 123.  The defendant relied on *Lopez*, and argued that nothing in the record established the arson's "substantial impact on interstate commerce."  *Id*.  The Seventh Circuit disagreed.  It held that, unlike the statute in *Lopez*,

"§ 844(i) *does* contain a jurisdictional element" and the "government need only prove that the arson in question destroyed or damaged property either 'used in' or 'used in any activity affecting' interstate commerce." *Id.* at 123-24.

Other circuits have followed suit.  In *United States v. Laton*, 352 F.3d 286, 292 (6th Cir. 2003), the Sixth Circuit compared § 844(i)'s commerce element to the jurisdictional elements challenged in other post-*Lopez* decisions.  It found that § 844(i)'s jurisdictional element "perfectly conforms with Congress's will" because it "mandates a case-by-case, building-by-building inquiry into whether that particular building is used in an activity that affects interstate commerce." *Id.* at 292, 295.  The Fourth Circuit also recognized that § 844(i)'s jurisdictional element limits its application to property "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." *Hill*, 927 F.3d at 199-200.

Defendants Fierro and Johnson acknowledge that § 844(i) contains a jurisdictional element, but they incorrectly argue that the plain language of § 844(i)'s jurisdictional element does not establish the required nexus to interstate commerce. (Dkt. 66, pg. 26.) The defendants not only fail to identify any authority that directly supports such a position, they overlook that courts have previously rejected the same or similar arguments.  *See Mahon,* 804 F.3d at 953; *Forsyth,* 771 Fed.Appx. at 679-80.

Given that its jurisdictional element, as written, sufficiently limits its application to activities that substantially affect interstate commerce, the constitutionality of § 844(i) is guaranteed.

3. The legislative history shows Congress appropriately exercised its "legislative judgment" under the Commerce Clause when it enacted § 844(i).

According to *Morrison*, the next step in the Commerce Clause analysis is to review § 844(i)'s legislative history.  While Congress is not normally required to make formal findings as to the substantial burdens that a regulated activity has on interstate commerce, the existence of such findings may "enable [courts] to evaluate the legislative judgment that the activity in question substantially affects interstate commerce, even though no such substantial effect [is] visible to the naked eye." *Morrison*, 529 U.S. at 612.

What insight can be gleaned from § 844(i)'s legislative history?  First and foremost, the legislative history confirms that Congress considered how bombings and arson affected interstate commerce, especially the heavy financial toll such acts have on businesses.  At the beginning of hearings before a House Subcommittee on H.R. 16699, Congressman Emanuel Celler and Assistant Attorney General Wil R. Wilson made the following observations:

> Mr. CELLER.  Bombings and the threat of bombings have become an ugly and recurrent incident of life in the cities throughout our Nation….  The actual and potential loss of life, destruction of property, and disruption of the daily lives of our citizens and our economy require a review of the adequacy of existing laws….
>
> * * * *
>
> Mr. WILSON.  As you are aware, the President has been deeply concerned about these dangerous and senseless bombings.  In March of this year, at his direction, the Department of Justice prepared and sent to Congress

legislation to enable the Federal Government to deal firmly with those whose violence and threatened violence directly affects the Federal Government or its special responsibility for protecting interstate commerce.  The cost of these bombings in this year alone has been staggering.….  Private businesses – theaters, restaurants, and corporate offices – have been hit….We cannot tolerate the cost of [these bombings] in lives, in fear, or in dollars.

\* \* \* \*

These bombings must be stopped….  We must do our best to stop bomb threats as well.  The threats, as well as the bombings, take a heavy toll – in fear and in dollar cost.  While we have no figures to illustrate the cost of bomb threats nationwide, the cost that the General Services Administration estimates for Federal buildings under its jurisdiction is illustrative.  In the fiscal year 1970, actual bombing or arson incidents cause an estimated $612,569 worth of damage.  In the last half of that period, the dollar loss estimated as a result of 130 evacuations due to bomb threats was $2.3 million.  We must do our utmost to prevent this waste.

*To Amend Title 18 of the United States Code to Provide for Better Control of Interstate Traffic in Explosives, Hearing on H. R. 17154, H. R. 16699, H. R. 18573, Before Subcomm. No. 5 of the Comm. on the Judiciary*, 91st Cong. 34-35 (1970)(statements of Congressman Emanuel Celler and Assistant Attorney General Wil R. Wilson, U.S. Dept. of Justice).

The legislative history also shows that Congress intended to exercise its full power under the Commerce Clause to protect businesses from bombings and arson:

Mr. WILSON. Accordingly, we have entirely rewritten [the statute], broadening and simplifying the categories of prohibited actions….  [W]e have added a new provision (subsection (f)) covering malicious damage or destruction by means of an explosive of any property used for business purposes by a person engaged in commerce or any activity affecting commerce….  Since the term "affecting commerce"

13

embraces "the fullest jurisdictional breadth constitutionally permissible under the commerce clause," *NLRB v. Reliance Fuel Corp.*, 371 U.S. 224, 226 (1963), subsection (f) would cover damage by explosives to substantively any business property.

\* \* \* \*

Mr. RODINO.  That is the problem.  Mr. Wilson, subsection (f) or section 837, as proposed by H.R. 16699, applies to structures used "for business purposes."  I am a little bit in the dark.  Would this section and these words cover the bombing of police stations?  Would they cover the bombing of a private home?  Just what would the new section 837(f) cover?

Mr. WILSON.  …[W]hat this is designed for is the business office, where the business is in interstate commerce, giving the Federal Government a basis for jurisdiction.  It is to broaden the thing, to get at such things as the bombing of businesses office in New York City, where the business is in interstate commerce.

*Id.* at 56.

The defendants perceive the debate regarding Congress exercising its full power under the Commerce Clause as a negative.  They selectively reference a few remarks from § 844(i)'s legislative history and argue that these comments cast doubt as to whether any constitutional provision, including the Commerce Clause, authorized the passage of § 844(i).  (Dkt. 66, pg. 13-14).  Defendants' approach discounts the entirety of the record which shows that Congress not only debated the impact that bombings and arson have on interstate commerce, but it took the steps necessary to pass legislation that remained within the constitutional confines of the Commerce Clause.

4.   The connection between arson and commerce is evident.

The final step in the Commerce Clause analysis is to determine whether the connection between arson and interstate commerce is "attenuated." *Morrison*, 529 U.S. at 612.

Contrary to the Court's finding of attenuation in *Lopez*, there is a direct connection between arson and interstate commerce under § 844(i). By its own terms, § 844(i) only applies when fire is used to destroy a "building, vehicle, or other real or personal property" that is "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."

It is important to emphasize that courts strictly adhere to this connection, and any attempt to expand the protections of § 844(i) beyond business property is resoundingly rejected. For example, in *Jones*, the Court held that the limits of § 844(i) cannot be stretched to include personal residence because the connection to interstate commerce is simply too minimal. *Jones*, 529 U.S. at 859. Additionally, in *United States v. Craft*, 484 F.3d 922 (7th Cir. 2007), the court found that § 844(i) did not apply to a Hells Angels' clubhouse because members' dues had too little of an impact on interstate commerce.

For all of the reasons discussed above, Congress had a rational basis to pass § 844(i) because the statute proscribes arson that substantially affects interstate commerce.

B. Instrumentalities of Interstate Commerce

Even if this Court could decide, against the weight of authority, that there is no rational basis to connect arson with interstate commerce under § 844(i), the statute is

still constitutional because Congress used its Commerce Clause power to protect instrumentalities of interstate commerce.

As mentioned in *Lopez*, the Commerce Clause empowers Congress to "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activity." *Lopez*, 514 U.S. at 558 (citations omitted). This "instrumentalities" category directly applies to crimes that target instrumentalities or goods involved in interstate commerce. T*aylor*, 136 S. Ct. at 2079.

In *Wilson*, the Seventh Circuit applied *Lopez's* Commerce Clause analysis to the Freedom of Access to Clinic Entrances (FACE) Act. *Wilson*, 73 F.3d at 686. Although the holding centered primarily on *Lopez's* "substantial affect" category, the Seventh Circuit also discussed the applicability of the "instrumentalities" category to the FACE Act. *Id.* It opined that, under *Lopez's* "instrumentalities" category, the Commerce Clause authorizes Congress to: (1) regulate the instrumentalities of interstate commerce; (2) protect the instrumentalities of interstate commerce; (3) regulate persons in interstate commerce; (4) protect persons in interstate commerce; (5) regulate things in interstate commerce; or, (6) protect things in interstate commerce. *Id.*

The *Wilson* court went on to explain how Supreme Court precedent illustrates these six "subcategories" in the context of Commerce Clause analysis *Id.* at 686-87. The *Wilson* court started by discussing *Southern Railway Company v. United States*, 222 U.S. 20 (1911), where the Court upheld the Safety Appliance Acts, a series of regulations that

protected railroad cars moving in both interstate and intrastate commerce, and explained how Congress is empowered to pass legislation that protects instrumentalities of interstate commerce (e.g., railroad cars). *Wilson*, 73 F.3d at 687. The *Wilson* court next considered *Perez v. United States*, 402 U.S. 146, 150 (1971), in which the Supreme Court cited 18 U.S.C. § 32, a statute prohibiting the destruction of an airplane, as a valid exercise of Congress's power under the Commerce Clause.

*Wilson* is instructive because § 844(i) patently protects instrumentalities of interstate commerce. In this case, one must evaluate whether the protection of instrumentalities under § 844(i) is analogous to the protection of instrumentalities in *Southern Railway* and the statute considered in *Perez*. *Id.* Stated differently, the question is whether "vehicles" protected under § 844(i) are "instrumentalities of interstate commerce" in the same sense that railroad cars and airplanes are "instrumentalities of interstate commerce" in *Southern Railway* and *Perez*, respectively. *Id.*

At issue in *Southern Railway* was Congress's Safety Appliance Acts – legislation that, in part, required all common carriers "engaged in interstate commerce by railroad" to protect their railroad cars by installing "safety appliances." *Southern R. Co.*, 222 U.S. at 24. This requirement was part of a larger plan designed to protect not only railroad cars, but also people riding in the cars and cargo being moved by the cars. *Id.* at 26. The Court upheld the Safety Appliance Acts even though railroads are "highways of both interstate and intrastate commerce." *Id.* at 27. It determined that Congress had the

ability under the Commerce Clause to protect railroad cars (instrumentalities of interstate commerce), passengers (people in interstate commerce), and cargo (things in interstate commerce). *Wilson*, 73 F.3d at 687.

Congress also used its Commerce Clause power to enact 18 U.S.C. § 32. This statute prohibits the destruction of "any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce." 18 U.S.C. § 32(a)(1). The Supreme Court, in *Perez*, recognized 18 U.S.C. § 32 as a model example of how Congress used its Commerce Clause power to protect instrumentalities of interstate commerce. *Perez*, 402 U.S. at 150.

The protection of instrumentalities under § 844(i) is analogous to the protection of instrumentalities in *Southern Railway* and *Perez*. As with the statutes in these cases, the plain language of § 844(i) expressly protects any "vehicle" used in interstate commerce from arson. Vehicles, like airplanes and railroad cars, are instrumentalities of interstate commerce. 29 C.F.R. § 776.29(a). Moreover, the protections under § 844(i), like the protections provided by the Safety Appliance Acts, are part of a larger plan designed to safeguard all aspects of business against arson. Section 844(i) not only protects vehicles (instrumentalities of interstate commerce), it also covers buildings, real property, and personal property used in activity affecting interstate commerce.

The defendants' contention that *Lopez's* "instrumentalities" category does not apply because § 844(i) is not "limited to the instrumentalities of interstate commerce" is without merit. (Dkt. 66, pg. 11.) Their argument not only lacks any direct support, it

fails to adequately address the fact that *Lopez's* "instrumentalities" category expressly includes the "protection of persons and things." *Wilson*, 73 F.3d at 687.

The similarities between the Safety Appliance Acts, 18 U.S.C. § 32, and § 844(i) are undeniable.  Congress fully intended to use § 844(i) to protect instrumentalities of interstate commerce from arson; therefore, it is constitutional under the Commerce Clause.

### C.  Channels of Interstate Commerce

The last *Lopez* category focuses on Congress's ability to regulate "channels of interstate commerce." *Lopez*, 514 U.S. at 558.  The United States recognizes that the purpose of § 844(i) is not to regulate or protect channels of interstate commerce.  Therefore, it is not applicable.

### IV.   TENTH AMENDMENT

In conjunction with their Commerce Clause challenge, defendants Fierro and Johnson argue that if § 844(i) "otherwise violates the Tenth Amendment, the Court must invalidate it." (Dkt. 66, pgs. 3).  The defendants essentially argue that statutes like § 844(i) are unconstitutional if they act as a general police power.  (Id. at 2).  This theory, like the defendants' Commerce Clause analysis, is without merit.

The Tenth Amendment is a "mirror image of the enumerated powers that the Constitution confers on the federal government." *New York v. United States*, 505 U.S. 144, 156 (1992).  "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *Id*.  As

such, the Tenth Amendment cannot invalidate a statute that the Commerce Clause authorizes Congress to enact.  *United States v. Comstock*, 560 U.S. 126, 144 (2010).

The defendants attempt to rely on *Bond* to bolster their claim that "Congress cannot punish felonies generally."  (Dkt. 66, pg. 2).  But *Bond* does not help their argument.  The Court in *Bond* addressed the Chemical Weapons Convention Implementation Act of 1998, which prohibits possessing and using a "chemical weapon."  *Bond*, 572 U.S. at 848-49.  The Court held that the prohibition was ambiguous as to whether it applied to Bond's use of chemicals to poison her romantic rival in a lover's quarrel.  *Id*. at 852, 860.  The Court explained that, "in this curious case, we can insist on a clear indication that Congress meant to reach purely local crimes, before interpreting the statute's expansive language in a way that intrudes on the police power of the States."  *Id*. at 860 (citations omitted).  Finding no "such clear indication" in the statutory text, the Court held the chemical weapons provision inapplicable.  *Id*.

*Bond* has no application here.  The defendants fail to sufficiently dispute that the text of § 844(i) provides a "clear indication" of Congress's intent to regulate arson that targets business property used in interstate commerce.  And although the *Lopez* Court noted that States "possess the primary authority for defining and enforcing the criminal law," *Wilson*, 73 F.3d at 684, *Lopez*, 514 U.S. at 549 n.3, *Lopez* never called into question the well-established principle that Congress may regulate conduct even though that conduct already violates state law.  *Wilson*, 73, F.3d at 684.  As the Seventh Circuit explained:

> The Court long ago rejected the suggestion that
> Congress invades the areas reserved to the States by the
> Tenth Amendment simply because it exercises its
> authority under the Commerce Clause in a manner that
> displaces the States' exercise of their police powers . . . .
> It would []be a radical departure from long-established
> precedent for this Court to hold that the Tenth
> Amendment prohibits Congress from displacing state
> power laws regulating private activity.

*Wilson*, 73 F.3d at 684, citing *Hodel v. Virginia Surface Mining*, 452 U.S. 264, 291-92 (1981).

Given that Congress had a clear intent when it passed § 844(i) – to regulate arson

that affects interstate commerce – the statute does not violate the Tenth Amendment.

IV.     CONCLUSION

For all of the aforementioned reasons, the Commerce Clause empowered

Congress to enact § 844(i).  Therefore, the statute does not violate the Tenth

Amendment, and the defendants' motions should be denied.

Dated April 19, 2021

Respectfully submitted,

TIMOTHY M. O'SHEA
Acting United States Attorney

By:  */s/  Chadwick M. Elgersma*

_____
CHADWICK M. ELGERSMA
Assistant United States Attorney